## LEONARD *v.* BURR.

By a will made in 1842, the testator devised to B the use of certain land "until Gloversville shall be incorporated as a village, and then to the trustees of said village to be by them disposed of for the purpose of establishing a village library :" *Held*, that irrespective of the validity of the devise over to the trustees, the estate of B terminates upon the incorporation of Gloversville.

The devise of an estate, determinable upon the happening of a collateral event, is not enlarged by the failure of a devise over for remoteness or other invalidity. Otherwise, when the prior estate is subject to a conditional limitation which cannot take effect. —

*It seems* that the devise to the trustees of Gloversville, though for charitable uses, is void for remoteness. A suspension of the absolute power of alienation, without any devotion of the income of the property to charitable purposes, for an indefinite period, is not within any principle by which perpetuities for such objects can be excepted from the general rule of law.

Leonard v. Burr.

APPEAL from the Supreme Court. The action was brough in July, 1853, to recover the possession of a parcel of land situate in Gloversville, Fulton county, and was tried before the court, without a jury, in September, 1853, when the following facts were found: The plaintiff, Susan Leonard, is the wife of the plaintiff, Abner Leonard, and the mother and only heir at law of Sidney S. Mills Mills was, in his lifetime, and at his death, seized in fee and possessed of the premises described in the complaint, and died on the 8th of April, 1842, leaving a will, which was proved and recorded as a will of real estate on the 25th of that month. The will contained, among other things, a clause in these words: " 3. I give, devise and bequeath, unto Benjamin Bailey, my one-horse pleasure wagon, harness and horse; also, the use of three and a half acres, lying east of the road opposite the homestead, and being a part of the same, until Gloversville shall be incorporated as a village, and then to the trustees of said village, to be by them disposed of for the purpose of establishing a village library, provided an amount of money equal in value shall be raised and invested by said trustees in the purchase of books for said library."

The premises in the complaint are part of the three and a half acres. On the death of Mills, Bailey took possession of the lands devised, and remained in possession until the 30th of March, 1848, when he and his wife, by a quit-claim deed, conveyed the premises to the defendant, who took possession, and remained in possession thereof until the commencement of this action. On the trial, the plaintiffs offered to prove that Gloversville was, previous to and at the commencement of the action, to wit, on the 27th of January, 1853, incorporated as a village; but the defendant objected to such testimony, insisting that it was immaterial and irrelevant, and the court, on that ground, refused to receive the same. The plaintiffs excepted to the decision.

The answer of the defendant contained, among others, this allegation: "And the defendant further says, that the

village of Gloversville has never as yet been incorporated, nor have the said trustees of the village of Gloversville at any time raised, nor invested in books, the money mentioned in said will."

Upon the facts found, the court adjudged, as matter of law, that the premises described in the complaint were, by the third clause of the will, devised to Bailey absolutely and in fee simple; that he had good right to convey the same to the defendant, and that the defendant obtained a good and valid title thereto in fee simple, by virtue of said devise and conveyance, and was entitled to judgment. Exception was taken by the plaintiffs to this decision.

Judgment having been entered for the defendant, according to the decision, an appeal was taken by the plaintiffs. The judgment was affirmed at general term, and the plaintiffs appealed to this court.

*John Wells* and *Nicholas Hill*, for the appellants.

*William Wait* and *John H. Reynolds*, for the respondent.

STRONG, J. The devise to Bailey is, by the terms of it, " until Gloversville shall be incorporated as a village." These words are part of the devise itself. The use of the land, which imports the land, is given to him until the happening of that event. The event was contingent when the will was made, and at the death of the testator. Had the will stopped here, in respect to a disposition of this land, no one would doubt that the estate of Bailey would have been limited in duration to the contingency mentioned. He would have taken a base or qualified fee; an estate which might have continued forever, but which would have been liable to determination by the occurring of the contingency. The qualification to the devise would have created what is termed in the books a collateral limitation, making the estate determinable upon an event " collateral to the time of its

continuance." ( 4 *Kent's Com.*, 129 ; *Fearne, ed. of* 1826, 12 *to* 15, *and notes.* ) Among the instances of collateral limitations are, to a man and his heirs, tenants of the manor of Dale; or to a woman during widowhood ; or to C till the return of B from Rome ; or until B shall have paid him twenty pounds. ( 4 *Kent,* 129 ; 1 *Shep. Touch.,* 125 ; 2 *Crabb's Law of Real Prop.,* § 2135 ; 2 *Bl. Com.,* 155 ; *Fearne,* 12, 13, *and notes.* ) In respect to such limitations, the rule is, that " the estate will determine as soon as the event arises, and it never can be revived." ( 4 *Kent,* 129, *and cases cited ; Lewis on Perpet.,* 657 ; *Crabb's Real Prop.,* § 2135.)

I am unable to see how the devise to Bailey, by the words of the will giving him the use of the land until the event above specified, is affected, as to the duration of the estate, by any other part of the will. The devise over, in the same clause of the will — when Gloversville shall be incorporated — to the trustees of said village, to be disposed of for the purpose and with the proviso therein stated, is a further disposition of the land, to take effect upon the termination of the estate of Bailey. It was not intended thereby to abridge Bailey's interest, but to give the land to others when his interest had ceased. The language of the devise over is, " and then," obviously upon the incorporation of the village, " to the trustees." The incorporation is fixed as the limit of the prior estate and the period of commencement of the subsequent one. Whether, therefore, the latter can be upheld, or is invalid for any cause, can make no difference with the former estate, which had come to its appointed end by an event wholly independent of the operation or failure of that attempted to be created by the will to succeed it.

If the devise of the first estate had been in fee, with a proviso, that, upon the contingency expressed in the will, the trustees should have the land, the case would be very different. The first estate would then be determined only by the second taking effect. That would be according to

the language and spirit of the limitation. The limitation, in such a case, would be what is denominated a conditional limitation. There would be an estate in fee, determinable, during the regular period of its continuance, by another estate taking effect in an event provided for. And if the trustees could not take the land, the estate in fee would continue, as if no provision for another estate, in defeasance of it, had been made. (4 *Kent*, 127; *Lewis on Perpet.*, 531, 535, 657, 658.)

It was doubtless the intention of the testator to dispose absolutely of the entire interest in the land, but he intended to give the land to Bailey until a particular event, and then to the trustees. Assuming the devise to the trustees to be void, his intent, as to that, must fail; but there is no ground for claiming that, in that case, he intended Bailey's estate should continue beyond the limit prescribed in the devise to him. The event was not foreseen, and consequently no provision was made for it. The court cannot supply, what probably the testator would have done, if he had known the law when he framed the will. ( *Pickering* v. *Langdon*, 22 *Maine*, 428, 429; *Chapman* v. *Brown*, 3 *Burr*, 1634; *Doo* v. *Brabant*, 4 *Durn. & East*, 706.)

Several cases arising upon the Eden will are referred to and relied upon in favor of the defendant. ( *Anderson* v. *Jackson*, 16 *John.*, 382; *Lion* v. *Burtiss*, 20 *John.*, 483; *Wilkes* v. *Lion*, 2 *Cow.*, 333; *Waldron* v. *Gianini*, 6 *Hill*, 601.) By that will certain lands were devised to each of two sons of the testator in fee. It was then directed that if either should die without issue, his share should go to the survivor; and in case of both their deaths without issue, the testator's brother and sister should have all the property. It was held that the limitation over to the surviving son was valid as an executory devise, and, having taken effect in his favor, the Supreme Court held that he became seized, of the land devised to the deceased son, in fee tail with a remainder expectant in favor of the brother and sister, which estate

tail the statute converted into a fee simple absolute. In the Court of Errors, the devise to the brother and sister was held void, the Chancellor concurring with the Supreme Court as to the ground of invalidity; but one of the Senators placed his opinion on the ground that the latter devise was originally limited upon too remote a contingency, an indefinite failure of issue of the previous devisees. No division of the court was taken as to the ground. There is nothing here in conflict with the views above presented, or which can aid the defence.

Some other cases are cited by the defendant's counsel. In *Jackson* v. *Brown* (13 *Wend.*, 437), the testator devised lands to his son, S. B., for life, with remainder to the first son of S. B. for life, with remainder to the first and every other son and sons of the eldest son of his son, S. B., successively, to hold the same in tail male. The court decided that the limitation over to the great-grandson was too remote, and that the particular intent of the testator, to give life estates to the sons, must therefore fail; but, to effect the general intent, to keep the estate in his family as long as possible, construed the devise to give a life estate to the son and an estate tail to the grandson. The point of the case is, that the general intent of a testator, apparent upon a will, will be carried into effect, if practicable, although his particular intent cannot prevail. In the present case no intention of the testator, as to the disposition of the land after the termination of the first estate, appears upon the will, except that which, assuming the devise over to be void, the law will not execute.

In *Doe ex dem. Cannon* v. *Rucastle* (8 *Man., Grang. & Scott*, 876), the testator devised land to his son for life, and from and after his death gave the same to the issue of his son, and if he should not have any, to the testator's heirs at law. The court decided that the son took an estate tail. In *Ibbetson* v. *Ibbetson* (10 *Simons*, 495), the only point adjudged was that a trust of personal estate was void for remoteness.

These cases, and *Tollemache* v. *Coventry* (8 *Bligh*, N. S., 547), cited in the last case, have no application to the one before the court. *Mortimer* v. *Frost* (2 *Simons*, 274) and *Mackworth* v. *Hinkman* (2 *Keen*, 658) are similar to *Jackson* v. *Brown*, before stated.

The foregoing are the principal cases cited on the part of the defendant; the remaining ones are to rules about which there is no dispute.

I am satisfied, for the reasons stated, that if Gloversville has been incorporated, and the devise to the trustees cannot have effect, the defendant, as the grantor of Bailey, has no estate in the premises in question, and therefore that the court below, at the trial, erred in deciding the contrary, and in the rejection of the evidence offered to prove that the incorporation had taken place.

If the village of Gloversville has been incorporated, and the trustees have an estate in the land under the devise to them, the plaintiffs, of course, cannot recover, as they must have title in themselves to maintain the action. The defendant may avail himself of the title of the trustees, although not connected with it, as a bar to the action. But if the trustees cannot take the estate designed to be given them, which appears to have been assumed by the counsel and the court at the trial, and Bailey's title has ceased by its own limitation, the testator, as to this land, after the determination of Bailey's interest, died intestate, and it belongs to the plaintiff, in right of the wife as heir at law.

The question of the validity of the devise to the trustees does not arise on this appeal, as it does not appear that Gloversville has been incorporated. Until that fact is proved, it will not appear that the estate of Bailey has terminated, and the question upon the devise will not be reached. It was considered, at the trial, that the point was involved in the question of evidence, in reference to materiality; that if the devise to the trustees was void, the estate of Bailey was an absolute fee; if valid, the title would be

Leonard *v.* Burr.

out of the plaintiffs, and, therefore, the evidence excluded was immaterial—it would not, in either case, benefit the plaintiff. But this view is erroneous in two respects: it could not properly be assumed, if the devise over was valid, that the plaintiffs had not the title, as the trustees may have refused to accept the devise, or lost their rights under it, and the plaintiffs were entitled to give proof on that subject, and the evidence was important to show that Bailey's estate had ceased. It is not intended now to express or intimate any opinion as to the validity of the devise over.

My conclusion is, that the judgment should be reversed and a new trial granted, with costs to abide the event.

Denio, J. The defendant maintains that if the devise to the trustees of the village of Gloversville shall be held invalid on account of remoteness, the prior devise in favor of Benjamin Bailey is to be construed as conveying a fee simple; but if wrong in that position, he then insists that the devise to the trustees is effectual and that title out of the plaintiff is thus established. If successful in either position, he will be entitled to prevail in the action.

First. Assuming the devise to the village trustees to be void, it is, for the purpose of determining the effect of the prior disposition, to be considered to be stricken out of the will; and if it could be established that such prior devise would have carried a fee simple if nothing further had been said, it is clear that the ineffectual attempt to make a further disposition of the property, by way of a conditional limitation, will not prejudice the prior estate. But the devise to Bailey is not of a fee simple, but only of the use of the premises " until Gloversville shall be incorporated as a village." The testator then attempts to give a fee simple to the trustees of the contemplated village. If this is effectually done, the estate of the village corporation commences at the time Bailey's estate expires, not by way of substitution or in derogation of the estate before given, but as a disposition of the remainder of the

whole property in the land, after the devise to Bailey had been satisfied according to its own limitation. The plaintiff offered to prove that Gloversville was incorporated at a certain date after the testator's death; and, for the purpose of determining the present appeal, it may be considered as proved. That date, then, marked the termination of the estate of Bailey, according to the express terms of the devise by which it was created. That estate having terminated, it is quite immaterial to him whether the ulterior devise was valid or void. It cannot increase or diminish the duration of his estate, whichever way it shall be determined.

The cases relied on by the defendant's counsel are plainly distinguishable from the present. In all of them the first devise was of a fee simple or fee tail by the terms of the limitation, subject to be defeated by an executory devise, which, if it took effect, displaced the estate of the first devisee. In such cases, if the executory or conditional limitation fails on account of remoteness or other cause, or if the fact upon which it is limited to arise never takes place, or if it becomes impossible, the estate of the first devisee remains unimpaired. Such were the cases arising under the will of Medcef Eden. He had two sons, Medcef and Joseph, to each of whom he devised separate pieces of land in fee, making use of the usual words of inheritance. In a subsequent clause he declared that if either of his said two sons should depart this life without lawful issue, his share or part should go to the survivor; and in case of both their deaths without lawful issue, to his brother and sister living in England. It was held that the failure of issue mentioned was not indefinite, but referred to the period of the death of the sons, and that consequently they did not respectively take estates tail but estates in fee, subject to be defeated by the executory limitations in favor of each other. Both the brothers died successively without issue, and then a further question arose whether the ulterior limitation in favor of the testator's brother and sister, which was in somewhat different

Leonard v. Burr.

language — the word survivor being omitted — took effect; but it was held that the language of the will created a fee tail in the survivor of the two brothers, which the statute converted into a fee simple, thus cutting off the limitations in favor of the brother and sister. It was also considered too remote, as depending upon an indefinite failure of issue. (*Anderson* v. *Jackson*, 16 *John.*, 382; *Lion* v. *Burtiss*, 20 *id*, 483; *Wilkes* v. *Lion*, 2 *Cow.*, 333.) It will be perceived that the primary devises and, also the cross limitations, were of estates in fee, subject to be defeated by the taking effect of the subsequent limitations. When, therefore, it was a question whether one of those estates in fee had come to an end, it depended upon the consideration whether the next limitation was void or valid; for if void the original words of limitation were absolute and unconditional, and being in themselves sufficient to pass a fee, the estate was preserved. *Doe* v. *Rucastle* (8 *Mann., Gr. & Scott*, 876) and *Jackson* v. *Brown* (13 *Wend.*, 437), also relied upon by the defendant's counsel, are supposed to be hostile to this distinction, because the devise was, in terms, for the life of the devisee and then to his issue; but it was held that the rule in Shelly's case applied, and that the devisee took an estate tail, under the statute *de donis*, the word "issue" being considered a word of limitation and not of purchase. The cases upon this branch of the law reject the words denoting an estate for life in the first taker, and hold that he is the first tenant in tail. The authorities cited therefore fail to show that, where there is a devise of land determinable upon the happening of a collateral event, and there is then a further limitation which fails for illegality or other cause, the first devise is enlarged into a fee simple or other greater estate than that defined by the language by which it is limited; and I have been unable to find any case which establishes that position. The rule, as we consider it to exist, is laid down with great distinctness in Lewis' *Treatise on the Law of Perpetuities* (*p.* 657), thus: "The invalidity of a limitation on account of remoteness

places all prior gifts in the same situation as if it had been entirely omitted in the dispositive system. The gift of a fee simple, therefore, or of the entire interest, subject to an executory limitation which is too remote, takes effect as though it had been originally limited absolutely, or free from any divesting gift. A limitation of a life estate or other partial interest, with a remainder expectant on it which is void for remoteness, of course remains in *statu quo prius*, neither receiving enlargement nor suffering diminution. And the like holds with respect to executory limitations, not operating to divest previous partial estates, but expressed to take effect at some period subsequent to their determination ; the limited interest remains as originally created, both as to character and extent, without reference to the manner of devolution of the property after its expiration." ( *See, to the same effect*, 2 *Fcarne on Rem.*, 12 *to* 15, 134, *ed.* 1844.)

We concur in this explanation of the doctrine, and think it decisive of the present question. This conclusion is as consistent with all we can know of the intentions of the testator as it is possible to make it. It is true, as is argued, that he did not design to die intestate as to any portion of his estate in this land: He intended to give a certain interest to Bailey and the residue of the estate for public purposes. Bailey has enjoyed the interest provided for him ; but we see that as to the rest, assuming the further limitation to be void, the rules of law do not permit his intentions to be carried into effect. We are asked to conjecture that if he had been aware of the rule of law he would have given the entire estate to Bailey. This we do not know. We have no means of determining what, in that event, he would have done with the remaining interest in the land. We, therefore, hold it to be undevised. The law then steps in and appoints the succession to the testator's heir, precisely as it would have done with the whole interest if he had made no will at all.

Leonard *v.* Burr.

Second. The remainder, after the expiration of Bailey's estate, is not limited upon lives, but is to commence after the happening of an event which might occur soon, or at a very remote period, or might not happen at all. Such a limitation is void for remoteness, unless the circumstance that the gift is to a charitable use affects the case. (1 *R. S.*, 723, §§ 14, 15; *Hone's Ex'rs* v. *Van Schaick*, 20 *Wend.*, 564.)

There are two methods by which the absolute ownership and power of alienation may be suspended: one is by creating a future estate by way of executory devise or contingent remainder. In such cases, as it cannot be known in whom the future estate will ultimately vest, and as the person in whom it will so vest may not be in existence, no person can convey an absolute fee. The present case belongs to this class of dispositions tending to perpetuity. The village corporation, if it should be created, would be the recipient of the remainder in fee, but until it should come into existence the ultimate fee would be in abeyance. The other manner is by annexing to a present absolute estate in fee a trust, which by the general provisions of law would render it inalienable (1 *R. S.*, 730, § 66), or by directing the income or profits to be applied in perpetuity to some charitable purpose, in which case an alienation would be hostile to the object of the conveyance. The case of *Williams* v. *Williams* (4 *Seld.*, 525) belonged to the last mentioned class, and this court held that the statute did not apply. It was shown that gifts of property, for the purpose of devoting its income to charity, formed an established exception to the law against perpetuities, as it existed before the enactment of the Revised Statutes, and it was held not to be the intention of the legislature, in revising the branch of the law relating to perpetuities, to abolish that feature of the law of charities which allowed the income of property to be perpetually devoted to charitable purposes. It is obvious from this statement that the present case does not

fall within the principle of that decision. By the terms of this devise the property, during the whole indefinite period of the suspension of the power of alienation, is devoted to a private use. The charitable gift might not take effect until some very remote period, or it might not take effect at all, though there might remain a possibility that it would arise, and thus the estate would remain inalienable for an indefinite period, without the devotion of any of its income to the purposes of charity. It follows from this that there is nothing to take the case out of the statute, and consequently there is no ground upon which the devise to the trustees of the village can be sustained.

There is no devise of the residue of the testator's estate, but only a power in the executors to sell, and this does not give an estate by implication. (1 *R. S.*, 729, § 56.) The land therefore belongs to the plaintiff as the heir at law of the testator, and she should have been permitted to recover it.

The judgment of the Supreme Court must therefore be reversed and a new trial awarded, with costs to abide the event.

The decision was put upon the ground stated in the opinion of STRONG, J., and first discussed in that of DENIO, J.; JOHNSON, Ch. J., COMSTOCK, HARRIS, PRATT and ROOSEVELT, Js., concurring. JOHNSON, Ch. J., COMSTOCK and ROOSEVELT, Js., concurred with DENIO, J., as to the point secondly considered in his opinion, but the court did not pass upon it.

Judgment reversed and new trial ordered.